UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARLENE VINSON SIMS,

                                        Plaintiff,                Case # 17-CV-798-FPG

v.                                                                    DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

**INTRODUCTION**

Plaintiff Darlene Vinson Sims brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 6, 9. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

**BACKGROUND**

On March 15, 2013, Sims applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 157-63. She alleged disability since July 19, 2011 due to back and neck injuries, headaches, depression, leg pain, arthritis, nose bleeds, high blood pressure, high cholesterol, and kidney stones. Tr. 177. On March 19, 2015, Sims and a vocational expert ("VE") appeared and testified at a hearing before Administrative Law Judge Sharon Seeley ("the ALJ"). Tr. 37-77. On

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 5.

1

January 22, 2016, the ALJ issued a decision finding that Sims was not disabled within the meaning of the Act. Tr. 8-26. On June 26, 2017, the Appeals Council denied Sims's request for review. Tr. 1-7. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990) (holding that review of the Secretary's decision is not de novo and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Sims's claim for benefits under the process described above. At step one, the ALJ found that Sims had not engaged in substantial gainful activity since the alleged onset

3

date. Tr. 13. At step two, the ALJ found that Sims has the following severe impairments: degenerative disc disease, arthritis of the spines, hypertension, and depressive disorder. Tr. 13-14. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 14-16.

Next, the ALJ determined that Sims retains the RFC to perform less than the full range of sedentary work.[2] Tr. 16-21. Specifically, the ALJ found that Sims can lift, carry, push, and pull ten pounds occasionally and light items such as envelopes, folders, or small tools frequently; can sit for six hours and stand and/or walk for two hours in an eight-hour workday but must be able to alternate at will between sitting and standing while remaining on task; and cannot remain in a static position while sitting or standing. Tr. 16. The ALJ also found that Sims can occasionally reach overhead with the bilateral upper extremities, stoop, kneel, crawl, and climb stairs or ramps; cannot crouch or climb ladders, ropes, or scaffolds; and cannot tolerate concentrated exposure to weather, extreme cold or heat, or hazards like unprotected heights or moving machinery. *Id.* As to her mental capacity, the ALJ found that Sims can maintain attention and concentration for two-hour periods with customary work breaks but cannot handle supervisory responsibilities or adjust to frequent changes in work routines, processes, or settings. *Id.*

At step four, the ALJ relied on the VE's testimony and determined that Sims can perform her past relevant work as a Customer Service Representative. Tr. 21-22. Accordingly, the ALJ did not proceed to step five of the sequential analysis and she found that Sims was not disabled under the Act. Tr. 22.

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

4

**II.     Analysis**

Sims argues that remand is required because the ALJ erred at step four of the disability analysis when she determined that Sims could perform her past relevant work.[3] ECF No. 6-1 at 5-12; ECF No. 10 at 2. Specifically, Sims asserts that the VE's unclear testimony, a misstatement in the ALJ's decision, and an unresolved issue as to her ability to reach all invalidate the ALJ's step four conclusion. *Id.* For the reasons that follow, the Court finds that remand is required.

**A.     Step Four Evaluation**

At step four of the disability analysis, the ALJ determines whether the claimant's RFC permits her to perform the requirements of her past relevant work.[4] 20 C.F.R. § 404.1520(f). The ALJ will deny benefits at step four if the claimant "can meet the demands of [her] previous work, either as [she] actually performed it or as generally performed in the national economy." *Id.* § 404.1560(b)(2). The claimant has the burden at step four "to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis in original) (citations omitted). The ALJ uses the *Dictionary of Occupational Titles* ("DOT") "to evaluate jobs as they are generally performed," but she may rely on a VE to "offer specific testimony to explain the requirements of particular jobs." *Emser v. Berryhill*, No. 1:16-CV-00909 (MAT), 2018 WL 3390255, at *2 (W.D.N.Y. July 12, 2018) (citations and quotation mark omitted).

---

[3] Sims advances another argument that she believes warrants remand of this case; however, the Court will not reach that argument because it disposes of this matter based on the ALJ's step four error.

[4] Past relevant work is work that the claimant performed within the last 15 years, lasted long enough for the claimant to learn how to do it, and constituted substantial gainful activity. 20 C.F.R. §§ 404.1560(b)(1), 404.1565(a); *see also* S.S.R. 82-62, 1982 WL 31386, at *1-2 (S.S.A. Jan. 1, 1982). The parties do not dispute that Sims's work as a Customer Service Representative constitutes past relevant work.

"[D]etermination of a claimant's ability to perform past relevant work requires, at the very least, 'a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; [and] (2) medical evidence establishing how the impairment limits [his or her] ability to meet the physical and mental requirements of the work." *Abbott v. Colvin*, 596 F. App'x 21, 23 (2d Cir. 2015) (summary order) (quoting S.S.R. 82-62, 1982 WL 31386, at *3 (S.S.A. Jan. 1, 1982)).

Thus, when the ALJ finds that the claimant can perform her past relevant work, her decision must contain a specific finding of fact (1) as to the claimant's RFC; (2) as to the physical and mental demands of the past relevant work; and (3) that the claimant's RFC permits her to return to her past relevant work. S.S.R. 82-62, 1982 WL 31386, at *4; *see also, e.g.*, *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204-05 (W.D.N.Y. 2005) (citation omitted). The ALJ's step four finding "has far-reaching implications and must be developed and explained fully in the disability decision. Since this is an important and, in some instances, a controlling issue, every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." S.S.R. 82-62, 1982 WL 31386, at *3.

**B.    Record Evidence Related to Sims's Past Relevant Work**

"The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and nonexertional demands of such work." *Id.*

With respect to an eight-hour workday at her prior job, Sims indicated in a Disability Report that she walked and stood for two hours, sat for six hours, and wrote, typed, handled small objects, and reached for eight hours. Tr. 179. In a Work History Report, Sims indicated that she walked to take breaks and use the bathroom, stood "sometimes," sat "all the time," handled,

grabbed, or grasped big objects like packages, and wrote, typed, or handled small objects "all the time." Tr. 203. Although there was a space on the Work History Report for Sims to indicate how often she reached at her prior job, she left this answer blank.[5] *Id.* At the hearing, the ALJ did not probe into the specifics of Sims's past job duties—he only asked her how long she worked, how long she was out of work after her motor vehicle accident, and whether her job duties changed after her accident. Tr. 48.

### C. The VE's Testimony

At Sims's hearing, the ALJ asked the VE whether he reviewed materials related to Sims's work history, to which the VE answered that he had. Tr. 62. The ALJ then asked the VE to describe Sims's past work as it is generally performed in the national economy and as she actually performed it. *Id.* The VE indicated that Sims's past relevant work as a Customer Service Representative is generally performed at the light exertional level but that Sims performed it at the sedentary exertional level. Tr. 63.

The ALJ then asked the VE a series of hypothetical questions.[6] First, the ALJ asked the VE to consider whether an individual could perform Sims's past relevant work as it is generally performed or as Sims actually performed it if that individual is limited to, among other things, working at the light exertional level[7] and only occasionally reaching overhead. Tr. 63-64. The

---

[5] This document has inconsistent formatting; as a result, it is possible that Sims thought she was answering "all the time" in response to how often she wrote, typed, handled small objects, *and* reached at her prior job.

[6] The ALJ may pose a hypothetical question to the VE and rely on the VE's response "as long as there is substantial record evidence to support the assumption[s] upon which the [VE] based his opinion and accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (quotation marks and citations omitted).

[7] Specifically, the ALJ asked the VE to consider an individual who can lift and carry 20 pounds occasionally and 10 pounds frequently, which is consistent with how the regulations define light work. Tr. 63-64; *see* 20 C.F.R. § 404.1567(b).

7

VE opined that an individual with those limitations could perform the past work as generally and actually performed. Tr. 64.

Next, the ALJ asked the VE to consider whether an individual with the same physical limitations as the first hypothetical individual could perform Sims's past work with additional specified mental limitations. Tr. 66-67. The VE responded that he thought "the past work would still be suitable," but he did not specify whether he meant as it was generally or actually performed or both. Tr. 67.

Finally, the ALJ asked the VE to consider whether an individual with the same limitations as the first two hypothetical individuals could perform Sims's past work if restricted to the sedentary exertional level.[8] Tr. 68-69. The VE answered "yes," although he did not specify whether he meant as it was generally or actually performed or both. Tr. 70.

### D. The ALJ's Step Four Finding

At step four, the ALJ stated that:

[Sims]'s work history and earnings records show that she has past work within the last 15 years as a Customer Service Representative. The [VE] described this work as Sales Representative, Telephone Services ([DOT] Code 253.357-010) . . . that requires a sedentary exertional level both as generally performed and as [Sims] reported she performed it. This work meets the durational and substantial gainful activity requirements for past relevant work. I therefore find that this work is past relevant work.

In comparing [Sims]'s [RFC] with the physical and mental demands of this past relevant work, I find that [Sims] is able to perform it as actually and generally performed. The [VE] testified that an individual with the above referenced [RFC] could perform the above work both as it was actually performed by [Sims] and as it is generally performed in the national economy. Based on the [VE]'s testimony and a comparison of [Sims]'s [RFC] with the requirements of her past relevant work, I find that the claimant can perform this past relevant work.

---

[8] Specifically, the ALJ asked the VE to consider an individual who can lift and carry 10 pounds occasionally and light items frequently, which is consistent with how the regulations define sedentary work. Tr. 68-69; *see* 20 C.F.R. § 404.1567(a).

Tr. 21-22 (citation omitted)

In her step four finding, the ALJ incorrectly indicates that the Customer Service Representative job is generally performed at the sedentary exertional level—the VE specifically testified that the position is performed at the light exertional level pursuant to the DOT. Tr. 63; *see also* DOT # 253.357-010, 1991 WL 672379 (Jan. 1, 2016). The ALJ then finds that Sims can perform her past relevant work as it is generally performed. This is illogical: the ALJ limited Sims to sedentary work and the Customer Service Representative job is generally performed at the light exertional level. As noted above, the ALJ's step four finding "must be developed and explained fully in the disability decision" and "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." S.S.R. 82-62, 1982 WL 31386, at *3. The ALJ's decision in this case does not meet that standard; instead, it is confusing and inaccurate, which thwarts the Court's ability to conduct a meaningful review. *See, e.g.*, *Thomas v. Berryhill*, 337 F. Supp. 3d 235, 244 (W.D.N.Y. 2018) (noting that the ALJ must "explain the bases for [her] findings with sufficient specificity to permit meaningful review").

The Commissioner asserts that the ALJ's error in this regard was harmless because the ALJ also found that Sims could perform her past relevant work as she actually performed it, which was at the sedentary exertional level and is thus consistent with the RFC determination. ECF No. 9-1 at 10-14; *see Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) ("Where application of the correct legal principles to the record could lead only to the same conclusion, there is no need to require agency reconsideration.") (alterations omitted). Sims argues that the error is not harmless because the ALJ's determination that she can perform her past relevant work as she actually performed it was improper, and the Court agrees.

As noted above, when the ALJ finds that the claimant can perform her past relevant work, her decision must contain a specific finding of fact (1) as to the claimant's RFC; (2) as to the physical and mental demands of the past relevant work; and (3) that the claimant's RFC permits her to return to her past relevant work. S.S.R. 82-62, 1982 WL 31386, at *4. Here, the ALJ's decision contains only a specific finding of fact as to Sims's RFC; the decision does not make a specific finding of fact as to the physical and mental demands of Sims's past relevant work or that Sims's RFC permits her to return to that work. The ALJ merely asserts, without any explanation or analysis, that she conducted "a comparison of [Sims]'s [RFC] with the requirements of her past relevant work." Tr. 22.

Most importantly, and as Sims points out, there is a glaring inconsistency between the RFC finding that Sims can only occasionally reach overhead and Sims's report that her past relevant work required reaching for eight hours per day. The ability to reach overhead only occasionally means that Sims can reach up to one-third of the time, or about two-and-a-half hours total in an eight-hour workday. *See, e.g.*, DOT # 253.357-010, 1991 WL 672379 (defining the term "occasionally"). This clearly conflicts with Sims's report that she had to reach for eight hours total in an eight-hour workday at her prior job. Although it is unclear whether Sims actually had to reach overhead, the SSA defines "reaching" as "extending hands and arms in *any direction*," S.S.R. 85-15, 1985 WL 56857, at *7 (S.S.A. Jan. 1, 1985) (emphasis added), and therefore it is entirely possible that the overhead reaching requirements of Sims's prior job preclude her from performing it with her current limitations. The ALJ made no effort to resolve this inconsistency even though she must make her step four findings "as clearly and explicitly as circumstances permit." S.S.R. 82-62, 1982 WL 31386, at *3. Thus, the Court cannot ascertain whether the ALJ conducted a "careful appraisal" of how Sims's limitations would interfere with her ability to perform her past

work. *See Abbott*, 596 F. App'x at 23 ("[B]ecause the ALJ's analysis . . . offers only passing mention of [the claimant]'s identified nonexertional limitations, we cannot determine whether the ALJ conducted the requisite 'careful appraisal' of how [the claimant]'s nonexertional limitations would or would not affect her ability to function as a teacher.").

Accordingly, for the reasons stated, the Court finds that the ALJ erred at step four and remand is required. *See, e.g.*, *id.* at 23-24 (the ALJ's step four analysis did not address the claimant's nonexertional limitations and therefore the Second Circuit "remand[ed] for further consideration and explanation of whether [the claimant], in light of her identified [RFC] and her description of her past work, could perform the work of a teacher"); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (noting that "where we are unable to fathom the ALJ's rationale in relation to evidence in the record . . . we will not hesitate to remand for further findings or a clearer explanation for the decision") (internal quotation marks omitted).

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 9) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g). *See Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 4, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court